United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Ana Kono, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-22076-Civ-Scola |
| | ) | |
| University of Miami and Dr. Julio Laran, Defendants. | ) ) | |

### Order on Motion to Dismiss

Now before the Court is the Defendant the University of Miami's motion to dismiss the second amended complaint. For the reasons set forth below, the Court **grants in part and denies in part** the Defendant's motion to dismiss (**ECF No. 106**).

### 1. Background

The Plaintiff Ana Kono filed this suit against the Defendant University of Miami (the "University") for violations of Title IX of the Civil Rights Act, alleging that her professor Dr. Julian Laran sexually harassed her while she was a student in the University's marketing PhD program. Kono brings claims against the University for sexual harassment, hostile work environment, and retaliation. Dr. Laran was assigned as her faculty advisor and for her first-year research project. The program was very small, with only two other students beginning the program in August of 2014. (ECF No. 99 at ¶ 22.)

During the Spring 2015 semester, the University's marketing department held a two-day workshop as a learning and networking opportunity for students. (*Id.* at ¶ 25.) Students were required to attend two daytime workshops and a dinner. (*Id.*) Dr. Laran told Kono she was expected to attend a bar outing after the dinner as well. (*Id.* at ¶ 26.) Dr. Laran explained that "socializing at bars was critical to Plaintiff securing a subsequent academic position." (*Id.*) At the dinner event, Dr. Laran shared an inappropriate story, in which he was high from cocaine and "found himself in a stranger's home and witnessed a couple . . . having sexual intercourse in front of him with the intention that he watch." (*Id.* at ¶ 29.) While telling the story, he focused his attention on her. (*Id.* at ¶ 30.) After telling the story, he asked Kono to "share her wild stories" and indicated that "given her age, fifteen-year career, and being a woman of Brazilian descent that she probably had some comparable stories of her own." (*Id.* at ¶ 32.)

Kono claims that this began a pattern of intentional verbal harassment by Dr. Laran that lasted throughout her time at the University. (*Id.* at ¶ 33.) Dr.

Laran's demeanor toward Kono became "very hostile and highly offensive." (*Id.* at ¶ 34.) Even though she received positive feedback from the other faculty members and PhD students, Dr. Laran "belittled all of Plaintiff's research proposals." (*Id.* at ¶ 35.) Kono "sensed that Dr. Laran felt the constant need to diminish her and that he took pleasure in humiliating her privately and referring to her as a 'boring mom' in both private and public conversations." (*Id.* at ¶ 36.)

Because of Dr. Laran's conduct, Kono asked another faculty member Dr. Caglar Irmak to be her academic mentor and research advisor. Irmak agreed, but when Kono told Dr. Laran about her decision, he "threatened to jeopardize Plaintiff's academic future at UM and beyond, unless she continued having him as her academic mentor and research advisor." (*Id.* at ¶ 38.) He said that he would "make sure [her] academic career would be over before it began." (*Id.*) Based on these events, Kono "came to understand that his continued and repeated intimidation, ridicule and insult of her was discriminatory in nature and was rooted in gender bias, an understanding that was solidified when another female joined the PhD program and she also experienced similar harassing and abusive treatment from Dr. Laran." (*Id.* at ¶ 40.)

Kono states that "offensive and inappropriate sexual harassment" continued into her second year. For example, during a taxi ride with Dr. Laran and other PhD students, Dr. Laran stated that "the PhD candidate who had secured the most interviews, was able to achieve this by socializing with faculty at bars during marketing conferences despite her mediocre research" and that "by sleeping with influential faculty, she secured job security." (*Id.* at ¶ 44.) This message was again repeated during one of Dr. Laran's seminar classes, where Kono was the only female student in the class. (*Id.* at ¶ 46.) Kono also recounted inappropriate comments made during the marketing program happy hour gatherings, where Dr. Laran "continually made inappropriate comments about females that sexualized and objectified them" and "encouraged male PhD students to follow suit." (*Id.* at ¶ 49.) And, although Kono sought to distance herself from Dr. Laran in these social settings, he "often called out [Kono] in front of her peers as 'the boring mom, who didn't know how to party.'" (*Id.* at ¶ 51.)

While at the University, Kono learned from others that she was not the only female PhD candidate whom Dr. Laran sexually harassed. At a marketing conference, a former University PhD student told Kono that Dr. Laran had a "known pattern of sexually harassing female PhD candidates." (*Id.* at ¶ 48.) Indeed, in 2012, a student filed a formal complaint of sexual harassment against Dr. Laran. (*Id.* at ¶ 77.) The student alleged that Dr. Laran "was inappropriate with her in a social setting while being visually intoxicated in the early-morning hours." (*Id.*) After this complaint was filed, "upon information and belief . . . it

was brought to the attention of the Dean of Students, the department heads at the University's Business School, and Dr. Laran." (*Id.*)

Kono decided that she needed to find "an exit plan" and "could not be subject to Dr. Laran's continual inappropriate sexual innuendo comments, ridicule and belittling because of her gender, and the hostile sexual environment created by Dr. Laran for another two to three years while she completed her dissertation." (*Id.* at ¶ 54). Plaintiff asked a different faculty member, Dr. Chris Janiszewski, if he would be willing to be her dissertation chair. Dr. Janiszewski, new to the University faculty, "stated that he needed to consult with Dr. Laran to learn more about the role of a dissertation chair at UM and once he obtained such information, he would get back to Plaintiff with a response." (*Id.* at ¶ 61.) "Instead of hearing from Dr. Janiszewski, Plaintiff was called into Dr. Laran's office and informed that Dr. Laran had called a meeting with the entire marketing department to discuss her and that none of the faculty wanted to be her dissertation chair." (*Id.* at ¶ 63.) Although Kono states that Laran claimed to have held the meeting as PhD Program Coordinator, Kono alleges the meeting was "inappropriate, unorthodox, and not in accordance with protocol, which required that each student independently find their own dissertation chair." (*Id.*) Kono further asserts that given Dr. Laran's position as Coordinator of the marketing PhD program, "he was able to significantly influence the other faculty members so that they would not agree to act as her dissertation chair." (*Id.* at ¶ 65.) Namely, Dr. Laran "undertook a campaign to discourage all the other faculty members from assisting Plaintiff in her efforts." (*Id.* at ¶ 67.)

Kono met with the marketing research professors to persuade one of them to agree to be her dissertation chair. (*Id.*) While doing so, a senior faculty member, Dr. Marmorstein told Kono that Dr. Laran was "trouble," that he was "campaigning to blackball her," and that "it was well-known that Plaintiff had been suffering under Dr. Laran's mentorship." (*Id.* at ¶ 68.) Dr. Marmorstein said that "the entire marketing department, including senior faculty, was quite aware of his sexually harassing behavior towards Ana and other female students, but the faculty failed to do anything about it because they were afraid of Dr. Laran, his position as PhD Program Coordinator, and because of his publishing accomplishments." (*Id.* at ¶ 69.)

By April 2017, Kono learned she would have a final opportunity to form a dissertation committee with Dr. Howard Marmorstein, Dr. Caglar Irmak and Dr. Michael Tsiros. (*Id.* at ¶ 72.) According to Kono, this process was "created as a pretextual exercise meant to release UM from potential liability down the road." (*Id.* at ¶ 73.) Kono further claims that these faculty members, including Dr. Marmorstein and Dr. Johnson, "had direct knowledge of Dr. Laran's sexually harassing and highly inappropriate behavior towards Plaintiff and other

females." (*Id.* at ¶ 74.) Ultimately, Kono submitted a dissertation proposal to the committee, but was informed that the proposal was not good enough for her to continue and was dismissed from the marketing program. (*Id.*)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Sexual Harassment and Hostile Work Environment

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized that "sexual harassment of a student by a teacher constitutes actionable discrimination for the purposes of Title IX." *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1371 (11th Cir. 2000) (citing *Franklin v. Gwinnet County Public Schools*, 503 U.S. 60 (1992)). A Title IX funding recipient will not owe damages "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Judge Kathleen M. Williams previously found that Kono failed to state a claim for sexual harassment and hostile work environment against the University because she failed to identify an "appropriate person" with the "authority to take corrective action to end the discrimination." (ECF No. 93 at 8.) She dismissed the case without prejudice, determining that her assertions—that the entire marketing department knew and that it was "widely known in the UM Business School that Dr. Laran continually harassed female students and faculty members"—were insufficient to satisfy the notice requirement. (*Id.*) Moreover, Judge Williams previously determined Kono did not establish that Dr. Howard Marmorstein was an appropriate person under Title IX. (*Id.* at 9 n. 2.) Now, the Plaintiff argues that (1) Dr. Marmorstein was an appropriate person because he "had a duty to act on such claims" and (2) the notice requirement is satisfied because the University was aware of the formal complaint filed against Laran in 2012. Neither of these allegations is sufficient to state a claim.

First, Kono has not alleged that Dr. Marmorstein is an appropriate person with the authority to take corrective action and end Laran's discrimination. Indeed, if anything, the Second Amended Complaint implies that Laran is in a position of authority over Dr. Marmorstein. She alleges that both Laran and Marmorstein are professors in the University's Marketing PhD program. (ECF No. 99 at ¶¶ 17, 68.) She also alleges that the University placed "Dr. Laran in a position of power as the Marketing PhD Program Coordinator." (*Id.* at ¶ 111.) She says that Dr. Marmorstein and other faculty were aware of Dr. Laran's harassing behavior but would not act because "they were afraid of him, his position as Marketing PhD Program Coordinator, and because of his publishing accomplishments." (*Id.*) These allegations show that Dr. Marmorstein and other faculty with knowledge of Dr. Laran's behavior were not "appropriate people"

because they did not have authority over him. If anything, it appears that Dr. Laran had authority over those who knew of the harassment.

Kono's argument that the University had actual notice of Dr. Laran's behavior because Dr. Marmorstein knew, had "an affirmative duty pursuant to the Faculty Manual to report any instances of sexual harassment" and therefore an "appropriate person" should have known—is meritless. Judge Williams previously determined that this argument is "unavailing." (ECF No. 93 at 7.) Even if the University policy required faculty to report harassment to an appropriate person, this policy would not take away the requirement that a Title IX plaintiff must allege that an "appropriate person" had actual knowledge of the behavior. That an appropriate person should have known of the harassment is not sufficient to state a claim. *See Doe v. School Bd. of Broward County, Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010) (school districts may not be held liable on a theory of mere constructive notice); *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1291 (10th Cir. 2017) (reasoning that each mandatory reporter is not an appropriate person under Title IX because "[f]or example, consider a school where every employee receiving a report of sexual harassment must convey the report to the principal. If one employee fails to convey a report to the principal, that failure could be attributed to the school as a whole. This type of vicarious liability is precisely what the Supreme Court sought to avoid through the deliberate indifference standard.").

Second, Kono's allegations regarding the prior 2012 formal complaint are insufficient. Kono alleges that a student filed a formal complaint against Dr. Laran in 2012, which alleged that "Dr. Laran was inappropriate with her in a social setting while being visually intoxicated in the early-morning hours." (ECF No. 99 at ¶ 77.) "Upon information and belief, after this complaint was filed, it was brought to the attention of the Dean of Students, the department heads at UM Business School, and Dr. Laran." (*Id.*) The Court need not take as true allegations based merely "upon information and belief." *Smith v. City of Sumiton*, 578 Fed. App'x 933, 935 n. 4 (11th Cir. 2014) (citing *Twombly*, 550 U.S. at 167 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible)). Here, Kono does not explain how the formal complaint system works at the University, and, crucially, she does not explain who receives the complaints and who determines whether the complaints have merit. Nor does she explain under what circumstances the Dean of Students or the department heads at UM Business School would be notified of the complaint, nor that those circumstances were present here. In short, yet again, the Court cannot determine that an appropriate person with the authority to take corrective action to end the discrimination has received actual notice, and, as stated above, it is

insufficient that the University should have known. *See Doe*, 604 F.3d at 1254 (constructive notice is insufficient).

Kono cites to *Weis of Trustees of Fla. Gulf Coast Univ.*, 2020 WL 2219192, at *5 (M.D. Fla. May 7, 2020) to support her contention that the formal complaint establishes actual notice. However, in *Weis*, the Plaintiff alleged that a previous victim of harassment complained of the harasser's behavior "to his department chair." *Id.* The allegation that the department chair had actual knowledge that the professor was harassing others was sufficient to satisfy the notice requirement. Unlike *Weis*, Kono does not identify an "appropriate person" who was notified of the behavior complained of in 2012. Instead, she merely alleges that a complaint was filed, and notably she does not say how the complaint was filed or with whom. Even after Judge Williams explained that the Plaintiff needed to identify an appropriate person with actual notice, she failed to do so in her Second Amended Complaint.

### 4. Retaliation

With respect to Kono's retaliation claim, Judge Williams has already determined that Kono successfully stated a claim for retaliation. (ECF No. 11 at 6.) The University raises issues that Judge Williams has already addressed—namely, that Kono has not alleged that she engaged in statutorily protected conduct. For the reasons set forth in the Court's prior order (ECF No. 93 at 9-13), the Court rejects the University's arguments and denies the motion to dismiss with respect to the retaliation claim.

### 5. Conclusion

In sum, the Court **grants in part and denies in part** the University's motion to dismiss (**ECF No. 93**). The Court denies the motion to dismiss with respect to Kono's retaliation claim, and, because Kono has still failed to identify a University employee with the authority to take corrective action with actual knowledge of Dr. Laran's behavior, the Court dismisses counts one and two without leave to amend. Kono has had multiple opportunities to state a claim and has failed to do so. Nor did she move for leave to amend to remedy her Second Amended Complaint's shortcomings. *Avena v. Imperial Salon & Spa, Inc.*, 17-14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") The Court therefore denies her a fourth opportunity to try to allege her claims, and it dismisses Kono's claims with prejudice and without leave to amend.

**Done and ordered**, in Chambers, at Miami, Florida on June 12, 2020.

Robert N. Scola, Jr.
United States District Judge